IN THE UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

SUNFLOWER ELECTRIC POWER CORPORATION,    )
                                          Plaintiff,    )
                                                        )
vs.                                                     )          Case No. 04-1003-WEB
                                                        )
CLYDE BERGEMANN, INC.,                                  )
                                          Defendant.    )
_____)

## PRETRIAL ORDER

Pursuant to Fed. R. Civ. P. 16, a pretrial conference was held in this case on January 14, 2005, before the Honorable Karen Humphreys, U.S. Magistrate Judge.

This pretrial order shall supersede all pleadings and control the subsequent course of this case. It shall not be modified except by consent of the parties and the court's approval, or by order of the court to prevent manifest injustice. *See* Fed. R. Civ. P. 16(e); D. Kan. Rule 16.2(c).

**1.     APPEARANCES.**

The plaintiff, Sunflower Electric Power Corporation, appeared at the pretrial conference through counsel, Harry M. Bleeker, Esq. The defendant, Clyde Bergemann, Inc., appeared in person through counsel, William F. Kluge, III, Esq and by and through H. Michael Dever, Esq by telephone conference.

**2.     NATURE OF THE CASE.**

This is a breach of warranty case involving two separate sales of water cannons to the plaintiff.

**3.     PRELIMINARY MATTERS.**

**a.     Subject Matter Jurisdiction.** Subject matter jurisdiction is invoked under 28 U.S.C. § 1332, and is not disputed.

1

**b.** **Personal Jurisdiction.** The court's personal jurisdiction over the parties is not disputed.

**c.** **Venue.** The parties stipulate that venue properly rests with this court.

**d.** **Governing Law.** Subject to the court's determination of the law that applies to the case, the parties believe and agree that the substantive issues in this case are governed by the following law:

    (1) Kansas and the laws of the United States.

    (2) Procedural and evidentiary issues governed by the laws of the United States.

**4.** **STIPULATIONS.**

**a.** The following facts are uncontroverted:

    (1) In 1998, plaintiff purchased for use in its Holcomb Plant a Water Cannon Cleaning System consisting in part of two model WLB90 Water Cannons, valves and fittings and control systems including software and heat flux sensors.

    (2) The water cannon system became operational in April 1999.

    (3) In March 2002, a second set of two water cannons sold by defendant to plaintiff at the Holcomb Plant became operational.

    (4). In addition to the two water cannons, plaintiff purchased from the defendant system components manufactured by ASI.

**b.** The following documents constitute business records within the scope of Fed. R. Evid. 803(6) and may be introduced in evidence during trial without further foundation, subject to objections based solely on grounds of relevancy:

    (1) Letter dated May 6, 1998 from Clyde Bergemann to Sunflower Electric

    (2) Letter dated June 23, 1998 from Clyde Bergemann to Sunflower Electric

    (3) Letter dated June 26, 1998 from Dominick Garton to Paul Perrone

(4)     Email dated June 13, 2001 from Dominick Garton to Mike Shreves, et al. with revised proposal

(5)     Email dated June 13, 2002 from Linville to Vsetecka

(6)     Reply to June 13, 2002 email from Sramek

(7)     Reply to June 13, 2002 email from Tom Dinkle

(8)     Email dated June 14, 2002 to John at Clyde Bergemann from Corey Linville

(9)     Email dated June 16, 2003 from Linville to Schimke

(10)    Letter dated July 16, 2003 from Brian Subsavage to Emily Vsetecka

(11)    Letter dated August 1, 2003 from Booher to Linville

(12)    Letter dated August 12, 2003 from Garton to Linville

(13)    Letter dated September 11, 2003 from Schimke to Garton

(14)    Letter dated October 3, 2003 from Schwade to Schimke

(15)    Letter dated October 16, 2003 from Schimke to Schwade

(16)    Letter dated October 28, 2003 from Schwade to Schimke

(17)    May 6, 1998 correspondence from Scott Wilson to Dominick Garton

(18)    April 15, 1999 correspondence from Scott Wilson to Jeff Atchley

(19)    April 13, 1999 email from Scott Wilson to Jeff Atchley

(20)    April 28, 1999 correspondence from Paul Perrone to Hans Schwade

(21)    January 2, 2001 correspondence from Paul Perrone to Hans Schwade

(22)    July 11, 2002 correspondence from Charles St. England to John Grizzard

(23)    May 30, 2002 correspondence from Randy Carter to John Grizzard

(24)    February 18, 2003, correspondence from Dominick Garton to Corey Linville

(25)    August 1, 2003 correspondence from Joel H. Booher to Corey Linville

(26)   Email dated February 25, 1999 from Randy Carter to Hans Schwade

(27)   March 12, 1999 correspondence from Randy Carter to Hans Schwade

(28)   March 22, 1999 correspondence from Randy Carter to Hans Schwade

(29)   April 5, 1999 correspondence from Randy Carter to Hans Schwade

(30)   June 18, 1999 correspondence from Randy Carter to Hans Schwade

(31)   May 14, 1999 email from Jeff Atchley to Scott Wilson

(32)   July 18, 1999 email from Randy Carter to Hans Schwade

(33)   July 18, 1999 correspondence from Randy Carter to Hans Schwade

(34)   July 29, 1999 correspondence from Randy Carter to Hans Schwade

(35)   March 11, 2002 correspondence from Randy Carter to John Grizzard.

(36)   July 10, 2002 correspondence from Randy Carter to John Grizzard

(37)   August 6, 2001 correspondence from Anthony F. Lexa to John Grizzard

(38)   October 11, 2002 correspondence from Michele Sutton to John Grizzard

(39)   Water cleaning system proposal dated March 31, 1998

(40)   Water cleaning system proposal dated April 8, 1998 (Revision 1)

(41)   Clyde Bergemann, Inc.'s September 28, 2001 proposal to Mike Shreves
       regarding additional two water cannons

(42)   Purchase Order dated July 1998 from Sunflower Electric to Kansas City
       Equipment Company, No. 98-15763

(43)   Purchase Order dated July 8, 1998 from Sunflower Electric to Kansas City
       Equipment Company – No. 98-15763-Revision 1

(44)   Letter dated June 4, 2001 from Dominick Garton to Mike Shreves of
       Sunflower Electric with attachment

(45)   May 15, 2002 water cannon cleaning system tuning and performance    testing
       proposal

4

(46)    May 27, 2003 Clyde Bergemann water cannon system performance test procedure

(47)    Clyde Bergemann, Inc. June 2003 FEGT test

(48)    Holcomb Performance Test Report dated July 16, 2003 from Clyde Bergemann

(49)    Sunflower assessment of thermal impact testing of water cannons and water lances

(50)    Water cannon cost savings prepared by Shreves

(51)    Sunflower Capital Project Authorization – Bate pages D00260 – D00262

(52)    Sunflower Capital Project Authorization dated June 1998

(53)    Sunflower Capital Project Authorization dated February 1999

(54)    Sunflower Purchase Order No. 98-15764 to ASI

(55)    Clyde Bergemann Purchase Order No. 0014973-2

(56)    Clyde Bergemann Invoice No. M-0038744-02

(57)    Coal analysis data – Bate pages D002114 – D002312

(58)    Ash analysis data – Bate pages D002093 – D002101

(59)    Load data – Bate pages D001581 – D002024

(60)    FEGT analysis and notes – Bate pages D001577 – D001580

(61)    Heat rate data – Bate pages D002025

(62)    Outage/failure report – Bate pages D002026 – D002086

(63)    Boiler deslagging load drops – Bate pages D000287 – D002088

(64)    Clyde Bergemann Water Cannon Operation and Installation Manual

(65)    Clyde Bergemann Water Cannon Control System Manual

(66)    Technical Paper.   NOx. Emission Reduction by Furnace Cleanliness in Combustion and Management

5

(67)     SWEPCO, Welsh Unit 1 Water Cannon Effectiveness Study Test Report, RP-97-245-01-00

(68)     Relative Life of Boiler Tubes:  Water-Lance Cleaning vs. Water-Cannon Cleaning, January 9, 1998

(69)     TU Electric, Martin Lake Unit 3 Water Cannon Effectiveness Study Test Report, RP-98-112-01-00

(70)     Procedure for Thermal Impact Evaluation of the Water Cannons and Waterlance at the Holcomb Station of Sunflower Electric, TP-99-125-01-01

(71)     Procedure for Thermal Impact Evaluation of the Water Cannons and Waterlance at the Holcomb Station of Sunflower Electric, TP-99-125-01-00

(72)     Cleaning Performance and Thermal Impact of Water Cannon and Waterlance Operations at Holcomb Station, Sunflower Electric, RP-99-125-02-01

(73)     Water Cleaning Performance Evaluations at Sunflower Electric Power Corporation - Final Report, Diamond Power Specialty Company

(74)     Clyde Bergemann Water Cannon Tuning Testing, TP-99-15-01-03

(75)     Clyde Bergemann Performance Test Procedure, March 11, 2002

(76)     Clyde Bergemann Tune-Up Test Procedure, May 10, 2002

(77)     Sunflower Electric Power Corporation Water Cannon Tuning Test Report, RP-02-605-01-00

(78)     Water Cannon Tune-Up Test Report, August 6-8, 2002

(79)     Clyde Bergemann Water Cannon System Performance Test Procedure, May 27, 2003

(80)     Water Cannon Performance Report, Sunflower Electric, Holcomb facility, July 15, 2003

(81)     Intelligent Boiler Cleaning Can Improve the Bottom Line; Power Engineering June, 2004

(82)     Clyde Bergemann Boiler Cleaning Evaluation Program (Boiler Cleanliness Configurator)

(83)     Charles Breeding estimated boiler performance spreadsheet

(84)   Breeding Deposition Exh. 46, 47

(85)   Marketing Cooperation Agreement Between Clyde Bergemann and Applied Synergistics, Inc

(86)   Amendment to the Marketing Cooperation Agreement Between Clyde Bergemann and Applied Synergistics, Inc

(87)   March 31, 1998 Water Cleaning System Proposal for Holcomb Station

(88)   April 8, 1998 Water Cleaning System Proposal for Holcomb Station

(89)   June 4, 2001 Water Cannon System Upgrade Proposal for Holcomb Generating Station

(90)   Clyde Bergemann 2001 Predicted performance/FEGT reduction calculations. (Grizzard Exh. 44)

(91)   Clyde Bergemann 1998 Predicted performance/FEGT reduction calculations. (Grizzard Exh. 45)

(92)   Applied Synergistics Proposal Release Rorm, PR-145-01-01

(93)   Applied Synergistics Proposal Release Form, PR-145-01-02

(94)   Applied Synergistics Proposal Release Form, PR-98-186-01-00

(95)   Water Cannon Trouble Shooting Procedure TP-98-207-01-00

(96)   Procedure for set-up of the water cannons and thermal impact evaluation, technical procedure TP-99-99-125-01-00

(97)   Cleaning Performance and Thermal Impact of a Water Cannon and Waterlance Operations at Holcomb Station of Sunflower Electric RP-99-125-02-00

(98)   June 15, 1999 invoice from Applied Synergistics, Inc. to Clyde Bergemann, Inc

(99)   January 14, 2002 purchase order from Clyde Bergemann to Applied Synergistics, Inc

(100)   July 26, 2001 purchase order from Clyde Bergemann, Inc. to Applied Synergistics, Inc

(101)   September 25, 2001 Water Cannon Control System Operating Manual Sunflower Electric, Holcomb Unit 1, 0001569 REV B

(102)   June 19, 2002 Invoice from Applied Synergistics, Inc. to Clyde Bergemann, Inc

(103)   May 13, 2002 Invoice from Applied Synergistics, Inc. to Clyde Bergemann, Inc

(104)   April 19, 2002 Invoice from Applied Synergistics, Inc. to Clyde Bergemann, Inc

(105)   March 26, 2002, Invoice from Applied Synergistics, Inc. to Clyde Bergemann, Inc

(106)   August 8, 2002, check from Clyde Bergemann, Inc. to Applied Synergistics, Inc., with attached stub

(107)   June 20, 2002 check from Clyde Bergemann, Inc. to Applied Synergistics, Inc., with attached stub

(108)   May 23, 2002 check from Clyde Bergemann, Inc. to Applied Synergistics, Inc., with attached stub

(109)   April 30, 2002 check from Clyde Bergemann, Inc. to Applied Synergistics, Inc., with attached stub

The following paragraphs have not been the subject of a stipulation:

(110)   [Documents numbered D00001 through D001536, produced pursuant to Rule 26a]

(111)   [Documents numbered D001537 through D001576, produced in plaintiff's Supplemental Rule 26a Disclosure]

(112)   [Documents numbered D001577 through D001580 produced in plaintiff's Second Supplemental 26a Disclosure]

(113)   [Documents numbered D002685 through D003325 produced in support of plaintiff's damages]

(114)   [Documents produced in Response to Defendant's First, Second, Third, Fourth, Fifth and Sixth Request for Production of Documents (including electronic data)]

8

(115)   [All documents produced by Defendant Clyde Bergemann, Inc., in Response to Plaintiff's First and Second Request for Production of Documents]

(116)   [All documents produced by Defendant Clyde Bergemann, Inc., pursuant to Rule 26a]

**c**.      Copies of exhibits may be used during trial in lieu of originals.

**d**.      The parties have not stipulated to the admission of  trial exhibits but will confer in advance of trial regarding admissibility.

**e.**      At trial, witnesses who are within the subpoena power of the court and who are officers, agents, or employees of the parties need not be formally subpoenaed to testify, provided that opposing counsel is given at least 5 days advance notice of the desired date of trial testimony.

**f.**      By no later than 5:00  p.m. each day of trial, counsel shall confer and exchange a good faith list of the witnesses who are expected to testify the next day of trial.

**5.**      **FACTUAL CONTENTIONS.**

    **a.**      **Plaintiff's Contentions.**

Sunflower Electric Power Corporation (Sunflower) is a public utility with its primary generating unit located in Holcomb, Kansas.   The Holcomb plant is a 360 megawatt coal-fired generating unit that sells electricity to electrical cooperatives throughout western Kansas.

Prior to 1998, Sunflower was experiencing formation of slag deposits in the superheater section of its boiler due primarily to excessive Furnace Exit Gas Temperatures (FEGT).   The defendant, Clyde Bergemann,  represented to Sunflower that their water cleaning system was ideally suited to address the slag problem experienced by Sunflower and installation of a two water cannon system would reduce the FEGT in the boiler by 100 degrees Fahrenheit.   This was a critical factor for Sunflower Electric and in reliance upon the express representations of Clyde Bergemann they proceeded to install the defendant's cannons in April, 1999, including the required control systems

and software sold by Clyde Bergemann's exclusive marketing partner, Applied Synergistics, Inc. (ASI), who, under its marketing agreement with Clyde Bergemann was prohibited from selling such control systems directly to a customer without the specific approval of Clyde Bergemann.

Sunflower did not receive the represented reduction in FEGT and in June, 2001, the defendant recommended the addition of two additional cannons and represented that the addition of the two cannons would not only realize the original 100 degree Fahrenheit drop in temperature but would also achieve an additional 70 degree Fahrenheit drop, for a total of 170 degrees Fahrenheit.  In reliance upon the express representations of the defendant, Sunflower installed the additional cannons with the ASI software purchased directly from Clyde Bergemann.  Despite repeated tuning of the cannons, and assurances that the cannons could achieve the represented performance, the four cannon water system failed to reduce the FEGT as represented.  Finally, in June, 2003, the defendant in an attempt to document the performance of their water cleaning system, designed and administered a test to demonstrate the performance of its system.  The test documented that FEGT was reduced by only 12 degrees Fahrenheit.

The water cleaning system sold by defendant is incapable of reducing FEGT as represented by the defendant and is incapable of reducing slag formation in the plaintiff's boiler.  Clyde Bergemann has breached its express warranty to the plaintiff.  In reliance upon the representations of the defendant, Sunflower has incurred damages of $808,949.14 for the purchase and installation of the defendant's water cleaning system, which is of no benefit to the plaintiff.

     **b.**     **Defendant's Contentions.**

In 1998, Plaintiff purchased from Defendant, Clyde Bergemann, Inc. ("CB") two (2) model 90 WLB water cannons, along with valves and fittings for use in Plaintiff's Holcomb plant.  In addition to the water cannons, Plaintiff purchased directly from Applied Synergistics, Inc. ("ASI"),

the control system, including software and heat flux sensors necessary to properly control operation of the water cannons.  CB agreed to provide the water cannon system for a test period of four weeks after start up.  CB warranted the water cannons to be free of defects in material and workmanship for a period not to exceed 12 months of operations.  ASI provided separate warranties with regard to its product sold directly to Plaintiff.  The water cannon system became operational in April 1999. The water cannon system was designed to effectively clean the furnace walls, thereby improving performance at the Holcomb plant by increasing heat transfer through the furnace walls.

In March 2002, a second set of two water cannons sold by CB to Plaintiff at the Holcomb plan became operational.  The terms and conditions of the 2002 sale were the same as the 1998/1999 sale. In addition to the two water cannons, Plaintiff purchased system components manufactured by ASI. Plaintiff's purchase of the second set of water cannons was an independent transaction and was not a result of any claimed warranties.

At all times, the water cannons effectively cleaned the furnace walls and improved performance at the Holcomb plant by increasing heat transfer through the furnace walls.  CB has complied with all terms and conditions of its contract with Plaintiff, and has not breached its contract with Plaintiff.  Plaintiff did not timely reject or revoke acceptance of the goods.  At no time did CB expressly warrant that the initial two water cannons sold would reduce furnace exhaust gas temperatures ("FEGT") by 100º Fahrenheit, or the subsequent sale of two water cannons would reduce FEGT by an additional 70º Fahrenheit.  At no time did CB represent that tuning would achieve alleged FEGT warranted reductions.

6.      THEORIES OF RECOVERY.

        a.      List of Plaintiff's Theories of Recovery.  Plaintiff asserts that it is entitled to recover upon the following theory: breach of express warranty.

11

Defendant breached its express warranty that its water cleaning system (first two cannons) would reduce FEGT by 100 degrees Fahrenheit.

Defendant breached its express warranty that its water cleaning system (four cannons) would reduce FEGT 170 degrees Fahrenheit.

     **b.**     **Essential Elements of Plaintiff's Theory of Recovery.** Subject to the court's determination of the law that applies to this case, in order to prevail on this theory of recovery, plaintiff has the burden of proving the following essential elements under K.S.A 84-2-313:

     (1)     An affirmation of fact or promise, made by the seller to the buyer relating to the goods, and which becomes part of the basis of the bargain.

     (2)     Breach of the affirmation of fact or promise by seller.

     (3)     Damages.

**7.**     **DEFENSES.**

     **a**.     **List of Defendant's Defenses and Affirmative Defenses.** Defendant asserts the following defenses and affirmative defenses:

     (1)     Clyde Bergemann has complied with all terms and conditions of its contract with Plaintiff and has not breached its contract with Plaintiff.

     (2)     Plaintiff did not timely reject or revoke acceptance of the goods.

     (3)     At no time did Clyde Bergemann expressly warrant that the initial two water cannons sold would reduce furnace exit gas temperatures (FEGT) by 100°F.

     (4)     At no time did Clyde Bergemann expressly warrant that the subsequent sale of two water cannons would reduce FEGT by an additional 70°F.

     (5)     At no time did Clyde Bergemann represent that tuning would achieve alleged FEGT warranted reductions.

     (6)     Assuming arguendo the water cannons failed to perform according to Clyde Bergemann's contractual commitment, failure of performance would be due to problems associated with the control system component of the water

cannons, which was sold directly to plaintiff by a non-party, unrelated entity, Applied Synergistics, Inc.

(7)    Some or all of the plaintiff's claims are barred by the applicable statute of limitations.

(8)    Plaintiff's claims are barred by the doctrine of laches.

(9)    Plaintiff's claims are barred by the doctrine of waiver.

(10)   Plaintiff's claims are barred by the doctrine of estoppel.

(11)   To the extent Plaintiff claims oral contracts containing the alleged express warranties, Plaintiff's claims are barred by the statute of frauds.

**b.    Essential Elements of Defendant's Affirmative Defenses.**  Subject to the court's determination of the law that applies to this case, the defendant believes that, in order to prevail on this affirmative defense, defendant has the burden of proving the following essential elements:

(1)    Statute of frauds (KS §84-2-201)

    (a)    Contract for sale of goods for the price of $500 or more.

    (b)    No writing sufficient to indicate that a contract for sale had been made between the parties and signed by the party against whom enforcement is sought or by its authorized agent or broker.

    (c)    Defense is applicable to the extent plaintiff contends that defendant sold two separate sets of water cannons with alleged warranties regarding reduction in FEGT by specific amounts as asserted in complaint.

(2)    Statute of limitations (KS  §84-2-725)

    (a)    Action for breach of contract for sale must be commenced within four years after the cause of action has accrued.

    (b)    Cause of action accrues when the breach occurs.

    (c)    Breach of warranty occurs when tender of delivery is made.

(3)    Estoppel

       (a)     Whether the conduct of Sunflower in continuing to use the water cannons and in failing to allege a breach of warranty or identify said warranty precludes or estopps it from asserting a breach of warranty claim against Clyde Bergemann.

(4)     Laches

       (a)     Whether Sunflower neglected to assert its claim for breach of warranty for an unreasonable and unexplained length of time; and

       (b)     Whether the lapse of time and other circumstances caused prejudice to Clyde Bergemann.

(5)     Waiver

       (a)     Whether Sunflower voluntarily and intentionally renounced or gave up its alleged warranty rights or has caused or done some positive act or positive inaction which is inconsistent with its alleged contractual right to claim breach of warranty.

       (b)     Did Sunflower, with the knowledge of the breach of warranty, continue to possess and use the water cannons, thereby constituting a waiver of its claim of breach of warranty?

## 8.   FACTUAL ISSUES.

One or more of the parties believe that the following material issues will need to be resolved at trial by the jury if summary judgment is not granted:

(1)     Did Clyde Bergemann expressly warrant that the initial two water cannons would reduce FEGTs by 100°F?

(2)     Did Clyde Bergemann expressly warrant that the second set of two water cannons would reduce FEGTs by 70°F?

(3)     What other changes/modifications occurred at the Holcomb Plant which may have influenced/affected FEGTs?

(4)     What variability of accuracy of the measuring devices used for FEGTs impacted the reliability or accuracy of said measurements?

(5)     Assuming arguendo that plaintiff represented that FEGTs would be reduced by

14

100°F with regard to the first sale and an additional 70°F with regard to the second sale and that FEGTs were not reduced, did said failure result from the water cannons or the control system and heat flux sensors which were sold directly to Sunflower by a non-party, unrelated entity, Applied Synergistics, Inc.?

(6)    Whether plaintiff suffered damages as a result of defendant's conduct, and if so, the nature and extent of those damages.

(7)    Are the claims of the plaintiff barred by the applicable statute of limitations?

(8)    Has the conduct of the plaintiff resulted in a waiver of its claims against Clyde Bergemann?

(9)    Is the plaintiff estopped from asserting the claims against Clyde Bergemann?

(10)   Is the plaintiff guilty of laches, thereby precluding its claims against the defendant Clyde Bergemann?

(11)   Are plaintiff's claims barred by the statute of frauds?

(12)   Did plaintiff timely reject or revoke acceptance of the water cannons?

(13)   Did plaintiff delay pursuing its legal remedies against the defendant by detrimentally relying upon the misrepresentations of the defendant?

(14)   Were defendant's performance representations of its water cannon cleaning system achieved?

(15)   If defendant's performance representations were not achieved, when was that fact reasonably known to plaintiff?

## 9.    LEGAL ISSUES.

One or more of the parties believe that the following are the significant legal or evidentiary issues that will need to be resolved by the court in this case, whether on summary judgment motion or at trial:

(1)    Whether the sale of the first set of water cannons is barred by the applicable statute of limitations.

(2)    Whether any oral contract alleged by the plaintiff containing any express warranties regarding reduction of FEGTs is barred  by the statute of frauds  provision found in §2-201 of the Uniform Commercial Code?

15

(3)     Whether parol evidence is admissible to contradict the parties' written proposals and purchase orders, or to provide additional terms, where the proposals and purchase orders were intended to be complete and exclusive statements of the terms of their contracts.

(4)     Whether the express warranties provided in Defendant's proposals excluded any alleged inconsistent implied warranties?

10.     **DAMAGES.**

    **a.     Plaintiff's Damages.**

Plaintiff claims actual, out of pocket expenses of $808,949.14 for the purchase and installation of defendant's water cannon cleaning system.   The plaintiff is making no claim for lost profits.

    **b**.     **Defendant's Damages.**

    None claimed.

11.     **NON-MONETARY RELIEF REQUESTED, IF ANY.**

    None.

12.     **AMENDMENTS TO PLEADINGS.**

    None.

13.     **DISCOVERY.**

Under the scheduling order and any amendments, all discovery was to have been completed by December 31, 2004.  Discovery is complete.

Unopposed discovery may continue after the deadline for completion of discovery so long as it does not delay the briefing of or ruling on dispositive motions, or other pretrial preparations. Under these circumstances, the parties may conduct discovery beyond the deadline for completion of discovery if all parties are in agreement to do so, but the court will not be available to resolve any disputes that arise during the course of this extended discovery.

14.     **WITNESSES AND EXHIBITS.**

   **a.     Final Witness and Exhibit Disclosures Under Rule 26(a)(3).**  The parties' final witness and exhibit disclosures pursuant to Fed. R. Civ. P. 26(a)(3) shall be filed no later than 21 days before trial.  With regard to each witness disclosed under Fed. R. Civ. P. 26(a)(3)(A), the disclosures also shall set forth the subject matter of the expected testimony and a brief synopsis of the substance of the facts to which the witness is expected to testify. Witnesses expected to testify as experts shall be so designated. Witnesses and exhibits disclosed by one party may be called or offered by any other party.  Witnesses and exhibits not so disclosed and exchanged as required by the court's order shall not be permitted to testify or be received in evidence, respectively, except by agreement of counsel or upon order of the court.  The parties should bear in mind that seldom should anything be included in the final Rule 26(a)(3) disclosures that has not previously appeared in the initial Rule 26(a)(1) disclosures or a timely Rule 26(e) supplement thereto; otherwise, the witness or exhibit probably will be excluded at trial. *See* Fed. R. Civ. P. 37(c)(1).

   **b.     Objections.**  The parties shall file any objections under Fed. R. Civ. P. 26(a)(3) no later than 14 calendar days before trial.  The court shall deem waived any objection not timely asserted, unless excused by the court for good cause shown.

   **c.     Marking and Exchange of Exhibits.**  All exhibits shall be marked no later than 7 calendar days before trial.  The parties shall exchange copies of exhibits at or before the time they are marked.  The parties shall also prepare lists of their expected exhibits, in the form attached to this pretrial order, for use by the courtroom deputy clerk and the court reporter.  In marking their exhibits, the parties shall use preassigned ranges of numbered exhibits.  Exhibit Nos. 1-400 shall be reserved for plaintiff(s); Exhibit Nos. 401-800 shall be reserved for defendant(s); Exhibits 801 and higher shall be reserved for any third party.  Each exhibit that the parties <u>expect</u> to offer shall be

17

marked with an exhibit sticker, placed in a three-ring notebook, and tabbed with a numbered tab that corresponds to the exhibit number.

      **d.**      **Designations of Deposition Testimony.**

            **1.**      <u>**Written Depositions**</u>.  Consistent with Fed. R. Civ. P. 26(a)(3)(B), any deposition testimony sought to be offered by a party other than to impeach a testifying witness shall be designated by page and line in a pleading filed no later than 14 days before trial.  Any counter-designation in accordance with Fed. R. Civ. P. 32(a)(4),  together with any objections to the designations made by the offering party, shall be filed no later than 7 calendar days before trial.  Any objections to counter-designations shall be filed no later than 3 calendar days before trial.  The court will not entertain any objections to deposition testimony unless and until the parties have attempted in good faith to resolve the dispute among themselves either in person or via telephone conference.  Where the court must resolve disputes concerning presentation of deposition testimony at trial, the objecting party shall deliver a copy of the deposition to the trial judge no later than 1 business day before trial.  On this copy, those portions of the deposition that are intended to be presented at trial shall be marked by brackets in the margins with different colored highlighting.  Red highlighting shall be used for plaintiff(s), blue highlighting shall be used for defendant(s), and yellow highlighting shall be used for any third party.

            **2.**      <u>**Videotaped Depositions**</u>.  The paragraph immediately above applies to videotaped depositions as well as written deposition transcripts.  When, however, the parties require rulings outside the presence of the jury to facilitate a "clean" presentation of deposition testimony at trial, written transcripts rather than videotaped transcripts shall be presented in connection with the parties' objections.  A party who offers a videotaped deposition must edit the tape according to the designations and court's rulings so that it can be played in a manner that will not delay the trial.

15.    **MOTIONS.**

    **a.**    **Pending Motions.**

       None.

    **b.**    **Additional Pretrial Motions.**

After the pretrial conference, the parties intend to file the following motions:

    (1)    Plaintiff's Motion to Compel discovery (to be filed by **January 21, 2005**.)

    (2)    Defendant's Motion for Summary Judgment

The dispositive motion deadline, as established in the scheduling order and any amendments, is **January 28, 2005**.

Consistent with the scheduling order filed earlier in this case, the arguments and authorities section of briefs or memoranda submitted in connection with all further motions or other pretrial matters shall not exceed 30 pages, absent an order of the court.

    **c.**    **Motions Regarding Expert Testimony.**    No motion is anticipated to be filed by either party.

    **d.**    **Motions in Limine.**  All motions in limine, other than those challenging the propriety of an expert witness, shall be filed no later than 14 days before trial.  Briefs in opposition to such motions shall be filed no later than 7 days before trial.  Reply briefs in support of motions in limine shall not be allowed without leave of court.

16.    **TRIAL.**

    **a.**    This case is not currently set for trial but it will be set for trial  after all timely filed dispositive motions have been decided by the court.

    **b.**    Trial will be by jury.

    **c.**    Estimated trial time is 7-10 days.

**d.**     Trial will be in Wichita, Kansas, or such other place in the District of Kansas where the case may first be reached for trial.

**e.**     Pursuant to 28 U.S.C. § 636(c)(1), and by agreement and consent of the parties, this case may be tried by U.S. Magistrate Judge Karen M. Humphreys.

**f.**     Because of constraints on the judiciary's budget for the compensation of jurors, in any case in which the court is not notified of a settlement by **12:00 noon** on the day before the trial is scheduled to commence, the costs of jury fees and expenses will be assessed to the parties, or any of them, as the court may order.

**17.     SETTLEMENT.**

**a.     Status of Settlement Efforts.**

Mediation in this case was conducted on October 19, 2004 in Wichita, Kansas with Dennis L. Gillen, Esq., serving as the mediator.  The parties exchanged settlement offers/demands at the mediation.  It was determined by the parties during the mediation that it should reconvene after the parties have filed their dispositive motions and responses thereto.

**b.     Mediation and/or Other Method of Alternative Dispute Resolution.**  Mediation is ordered  following the ruling on defendant's motion for summary judgment.  A  representative with full financial authority for each party shall participate in mediation.

**18.     FURTHER PROCEEDINGS AND FILINGS.**

**a.     Status and/or Limine Conference.**   Relatively close to the date of trial, the trial judge will schedule a status and/or limine conference.

**b.     Trial Briefs.**   A party desiring to submit a trial brief shall comply with the requirements of D. Kan. Rule 7.6.  The court does not require trial briefs but finds them helpful if the parties anticipate that unique or difficult issues will arise during trial.

c.      **Voir Dire.**   Due to substantially differing views among judges of this court concerning the extent to which counsel will be allowed to participate in voir dire, counsel are encouraged to contact the trial judge's law clerk or courtroom deputy (in accordance with the preference of the particular trial judge) to determine what, if anything, actually needs to be submitted by way of proposed voir dire questions.   Generally, proposed voir dire questions only need to be submitted to address particularly unusual areas of questioning, or questions that are likely to result in objections by the opposing party.

d.      **Jury Instructions.**

(1)      Requests for proposed instructions in jury cases shall be submitted in compliance with Fed. R. Civ. P. 51 and D. Kan. Rule 51.1.  Under D. Kan. Rule 51.1, the parties and the attorneys have the joint responsibility to attempt to submit one agreed set of preliminary and final instructions that specifically focuses on the parties' factual contentions, the controverted essential elements of any claims or defenses, damages, and any other instructions unique to this case. In the event of disagreement, each party shall submit its own proposed instructions with a brief explanation, including legal authority as to why its proposed instruction is appropriate, or why its opponent's proposed instruction is inappropriate, or both.  Counsel are encouraged to contact the trial judge's law clerk or courtroom deputy (in accordance with the preference of the particular trial judge) to determine that judge's so-called standard or stock instructions, e.g., concerning the jury's deliberations, the evaluation of witnesses' credibility, etc.; it is not necessary to submit such proposed jury instructions to the court.

(2)      Proposed instructions  in  jury  cases  shall  be filed no later than 3 calendar days before trial.  Objections to any proposed instructions shall be filed no later than 1 business day before trial.

(3)      In addition to filing the proposed jury instructions, the parties shall submit their proposed instructions (formatted in WordPerfect 9.0, or earlier version) as an attachment to an Internet e-mail sent to the e-mail address of the assigned trial judge listed in paragraph II(E)(2)(c) of the *Administrative Procedures for Filing, Signing, and Verifying Pleadings and Papers by Electronic Means in Civil Cases.*

e.      **Proposed Findings of Fact and Conclusions of Law.**  Not applicable.

**19.     OTHER.**

a.      **Conventionally Filed Documents.**  The following documents shall be served by mail and by fax or hand-delivery on the same date they are filed with the court if they are filed conventionally (i.e., not filed electronically): final witness and exhibit disclosures and objections; deposition designations, counter-designations, and objections; motions in limine and briefs in support of or in opposition to such motions; trial briefs; proposed voir dire questions and objections; proposed jury instructions and objections; and proposed findings of fact and conclusions of law. In addition, a party filing a trial brief conventionally shall deliver an extra copy to the trial judge's chambers at the time of filing.

**20.     POSSIBLE ADJUSTMENT OF DEADLINES BY TRIAL JUDGE.**

With regard to pleadings filed shortly before or during trial (e.g., motions in limine, trial briefs, proposed jury instructions, etc.), this pretrial order reflects the deadlines that the court applies as a norm in most cases.  However, the parties should keep in mind that, as a practical matter, complete standardization of the court's pretrial orders is neither feasible nor desirable.  Depending on the judge who will preside over trial, and what adjustments may be appropriate given the complexity of a particular case, different deadlines and settings may be ordered.  Therefore, from the pretrial conference up to the date of trial, the parties must comply with any orders that might be

entered by the trial judge, as well as that judge's trial guidelines and/or exhibit instructions as posted

on the court's Internet website:

        http://www.ksd.uscourts.gov

IT IS SO ORDERED.

Dated this 28th day of January, 2005, at Wichita, Kansas.


        s/ Wesley E. Brown
        WESLEY E. BROWN
        UNITED STATES DISTRICT JUDGE