## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| Sunflower Electric Power | ) | |
| Corporation, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 04-1003-WEB |
| | ) | |
| Clyde Bergemann, Inc., | ) | |
| | ) | |
| Defendant. | ) | |
| ——————————————— | ) | |

### MEMORANDUM AND ORDER

Now before the Court is Defendant's motion for summary judgment and Plaintiff's motion to amend the pretrial order.[1]  Sunflower Electric Power Corporation (Sunflower), is suing for a breach of an express warranty for equipment bought from Clyde Bergemann (Bergemann).  Sunflower claims damages of $808,644.00.

Plaintiff moves for the Court to amend the pretrial order to include a claim of fraud.  Bergemann opposes Sunflower's motion but in the alternative argues that if the Court grants the motion, it should reopen discovery for 120 days.  The Court has jurisdiction over this case under 28 U.S.C. § 1332.

### PART ONE - Motion for Summary Judgment

---

[1] The parties are reminded to adhere to my standing order requiring parties to file paper copies with the Court in addition to electronic filing.
http://www.ksd.uscourts.gov/chambers/web/ECFOrder.pdf

I.  Standard

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits show there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  A principal objective of the summary judgment rule is to isolate and dispose of factually unsupported claims.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-324 (1986).

A fact is "material" if under the substantive law it is essential to the proper disposition of the claim. *Wright ex rel. Trust Co. of Kansas v. Abbott Laboratories, Inc.*, 259 F.3d 1226, 1234-1232 (10th Cir. 2001) quoting *Adler v. Wal-Mart Stores*, 144 F.3d 664, 670 (10th Cir. 1998).  "An issue is genuine if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Adler,* 144 F.3d at 670.

"The movant bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law." *Adler,* 144 F.3d at 670; *see Celotex*, 477 U.S. at 323.  The movant can do this by demonstrating a lack of evidence or an essential element of the nonmovant's claim.  *Adler,* 144 F.3d at 670; *See Celotex*, 477 U.S. at 323.  "If the movant carries this initial burden, the nonmovant that would bear the burden of persuasion at trial may not simply rest upon pleadings; the burden shifts to the nonmovant to go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) quoting Fed. R. Civ. P. 56.  "In its review, the Court construes the record in the light most favorable to the party opposing summary judgment." *Biester v. Midwest Health Servs.*, 77 F.3d 1264, 1266 (10th Cir. 1996).

2

"[S]ummary judgment is not a disfavored procedural shortcut; rather, it is an important procedure 'designed to secure the just, speedy and inexpensive determination of every action'" *Wichita Investors, L.L.C. v. Wichita Shopping Ctr. Assocs.*, 267 F. Supp. 2d 1049, 1051-1052 (D. Kan. 2003) quoting *Celotex*, 477 U.S. at 327.

## II.  Facts

1.  Sunflower is an electric power utility that operates a coal fired power plant in Finney County, Kansas.  (Pl. Br. ¶ 3).

2.  Bergemann is a Delaware corporation.  (Def. Notice of Removal ¶ 8).

3.  Prior to the installation of Bergemann's water cleaning cannons, Sunflower was experiencing high furnace exit gas temperatures (FEGT) which resulted in excessive molten slag accumulation in the pendant section of its boiler.  (Schimke Dep. at 11).

4.  When coal is burnt in a boiler, a portion of the coal does not burn and is called ash refuse.  (Linville Dep. at 18).  That ash refuse has a temperature at which it will melt or become molten, known as the ash fusion temperature.  (Id.).  If the FEGT is above the ash fusion point, the molten ash sticks to the tube surfaces of the boiler and creates slag.  (Id.).

5.  The more you can reduce the FEGT to the ash fusion point, the more likely a Plant is to reduce molten ash refuse and the accumulation of slag.  (Id. at 36).  The molten slag in Sunflower's boiler, if allowed to accumulate, can grow to the size of a vehicle and if it breaks loose, can fall seven or eight stories, causing significant damage to the boiler.  (Schimke Dep. at 11).

3

6.  With respect to the purchase of the first two water cannons, Brad Schimke (Schimke), Senior Manager of Power Production at Sunflower, stated that Bergemann represented that it's a fact that Bergmann can reduce the FEGT of the Sunflower Plant.  (Id. at 26).  Bergemann claims that Schimke also stated that he cannot remember participating in any conversations with Bergmann where they said they would reduce the FEGT.  (Id.).

7.  Sunflower states that its main objective by purchasing the water cannons was to reduce the FEGT.  (Id. at 27); (Def. Ex. E at 6); (Def. Ex. H).  Bergemann cites evidence to the contrary, showing this to be a disputed issue of material fact.  (Def. Ex. T); (Linville Dep. at 26).

8.  Bergemann provided a price proposal for the sale of two water cannons.  (Def. Ex. E); (Pl. Ex. 1).  Included in the proposal was a written warranty that the first two water cannons were to be free of defects in material and workmanship for a period not to exceed 12 months.  (Def. Ex. E); (Pl. Ex. 1).  In 1998, prior to the cannon purchase, Bergemann also provided a spreadsheet predicting a 100 degree Fahrenheit reduction with the installation of two water cannons.  (Shreves Dep. at 58); (Pl. Ex. 5); (Linville Dep. at 62-63).  Bergemann denies it provided such a spreadsheet, making this another disputed issue of material fact. (Def. Ex. C at 33-34); (Def. Ex. G at 93); (Def. Ex. L at 26); (Def. Ex. M at 50-52); (Shreves Dep. at 31-32).

9.  In July 1998, Sunflower purchased a Water Cannon Cleaning System consisting of two model WLB90 Water Cannons, valves, fittings and control systems including, hardware, software and heat flux sensors.  (Def. Ex. A, B).

10.  Bergemann agreed to provide the water cannon system for a test period of four weeks after it became operational.  (Def. Ex. A, D, E); (Pl. Ex. 1).

4

11.  The water cannon system became operational in April 1999.  (Pretrial Order Stipulation, ¶ 4(a)(2)).

12.  Sunflower did not experience a reduction in FEGT or slag after the installation of the water cannons.  (Shreves Dep. at 99, 134).  Bergemann disputes this fact.  (Def. Ex. 3); (Def. Ex. 4).

13.  Sunflower first learned the initial two water cannons were not achieving their represented performance approximately eight months after installation.  (Schimke Dep. at 34).

14.  After the installation of the initial two cannons, Sunflower operated at higher capacity factors, meaning that it ran at full loads for longer periods of time.  (Linville Dep. at 24, 96-97, 102-103); (Def. Ex. H).  Running the Plant at higher capacity results in the FEGT remaining in the molten temperature range for a longer period of time which results in further slagging problems; however, operating at a higher capacity does not by itself cause the FEGT to increase.  (Linville Dep. at 97).

15. Sunflower purchased two more water cannons in a purchase order dated January 14, 2002. (Def. Ex. I).  Bergemann states that the warranty for the second pair of cannons is in the purchase proposal dated June 4, 2001, which reads that the water cannons were to be free of defects in material and workmanship for a period not to exceed 12 months.  (Def. Ex. J).  Sunflower adds that the warranty also included calculations in the proposal estimating a total reduction of 200 Fahrenheit degrees in the FEGT for all four cannons, 70 degrees of which would be attributable to the second set of cannons.  (Pl. Ex. 4); (Def. Ex. J at 2).  Sunflower also points to an e-mail from Shreves describing a similar estimate from a conversation with a Bergemann representative.  (Def. Ex. H). Bergemann argues that this calculation was not a warranty, rather it was an estimate based on Bergemann's experience and an assumption for purposes of cost benefit calculations.  (Breeding Dep. at 43); (Pl. Ex. 8).

5

16.  The additional two cannons became operational March 2002.  (Pretrial Order,  ¶ 4(a)(3)).  Bergemann states that the additional two cannons were purchased to address the problem of increased slagging and high FEGT.  (Def. Ex. H, J).  Sunflower states that the two additional cannons were bought because the initial two cannons were ineffective.  (Linville Dep. at 98).

17.  Sunflower did not change the type of coal it burnt between 1999 and 2002.  (Id. at 105-106).

18.  Sunflower did not notice a decrease in the FEGT after the additional two water cannons were installed.  (Linville Dep. at 111).

19.  When John Grizzard, a Bergemann project manager, reviewed the file to determine why Sunflower was not receiving the expected FEGT reduction, he found that Bergemann's estimated surface area being cleaned was overstated by 100% which would result in a smaller area actually being cleaned and would result in a smaller decrease in FEGT.  (Grizzard Dep. at 29-30).

20.  Dominick Garton, a Bergemann representative, prepared a proposal to fine tune the water cannon cleaning system to obtain a baseline FEGT, run a test under those optimal conditions and verify the FEGT experienced at Sunflower.  (Grizzard. Dep. at 39); (Pl. Ex. 10).

21.  The test was performed in June of 2003 and it established that Sunflower had experienced a 12 degree Fahrenheit reduction in FEGT.  (Pl. Ex. 12).

22.  Sunflower used the water cannons until August 2003.[2]  (Linville Dep. at 151).

23.  In September 2003, Sunflower requested that Bergemann remove the water cannons and reimburse the amount paid.  (Def. Ex. K).

---

[2] Sunflower provides further details relating to this fact but fails to cite to the record; therefore, the Court declines to consider them.  See D. Kan. Rule 56.1(b) (Each fact in dispute shall refer with particularity to those portions of the record upon which the opposing party relies).

Sunflower has provided other facts regarding representations made well before the purchase of the water cannons at a coal conference in 1997 and well after the purchase of the cannons in 2004. (Schimke Dep. at 13-15); (Pl. Ex. 9); (Rafferty Dep. at 36); (Breeding Dep. at 79-80). These facts are too far removed and too general to be a part of the basis of the bargain and the Court will not consider them in the summary judgment analysis. Kan. Stat. Ann. § 84-2-313.

### III.  District of Kansas Rule 56.1

Defendant argues that Sunflower violated Local Rule 56.1(b) because Plaintiff's brief lists additional facts which are either immaterial or not concise. Defendant further argues that Sunflower violated the page limit for briefs in the scheduling order (Doc. 50).

A review of Sunflower's lengthy brief reveals that the same facts were repeated on different pages; therefore, in the interests of judicial economy, Plaintiff shall carefully review future court documents to ensure that they are concise and in accordance with Local Rule 56.1. (Pl. Br. ¶ ¶ 9, 6, 11, 12, 39); D. Kan. R. 56.1.

Defendant further argues that Plaintiff violated the scheduling order by filing an excessively long brief. (Doc. 50). Paragraph 3(d) of the scheduling order states "[t]he arguments and authorities section of briefs and memoranda submitted shall not exceed 30 pages..." (Id.). While Plaintiff's entire brief is 39 pages, sixteen of those pages are statements of fact; therefore, Plaintiff's arguments and authorities section is 23 pages long and within the allowable limit.

### IV.  Governing Law

A federal court sitting in diversity jurisdiction applies the substantive law and the choice of law provisions of the forum state, which in this case is Kansas. *Missouri P.R. Co. v. Kansas Gas & Electric Co.,* 862 F.2d 796, 798 n1 (10th Cir. 1988). "For purposes of contract construction, Kansas follows the theory of lex loci contractus – the place of the making of the contract controls. Under this approach, the court looks to where the last act necessary for the creation of the contract takes place, and that state's law controls." *Clements v. Emery Worldwide Airlines, Inc.*, 44 F. Supp. 2d 1141, 1145 (D. Kan. 1999). "A contract is made at the time when the last act necessary for its formation is done, and at the place where that final act is done." *Smith v. McBride & Dehmer Constr. Co.*, 216 Kan. 76, 79, 530 P.2d 1222, 1225 (1975). Bergemann argues that Sunflower accepted offers to purchase water cannons on two separate occasions in Kansas. While Sunflower disputes that these purchases were two transactions, it does not dispute that acceptance of the contract was consummated in Kansas and it argues Kansas law to support its claims; therefore, the Court will apply Kansas law in this motion for summary judgment.

## V.  Analysis

Sunflower alleges that the sale of all four water cannons was one purchase and that Bergemann made an express warranty to reduce the FEGT by a specific number of degrees. Bergemann argues that the sale of the four water cannons were actually two separate purchases and Sunflower's claim ought to be dismissed because: 1) there was no express warranty; 2) the statute of limitations has expired; 3) Sunflower did not provide timely notice of a breach of warranty nor did Plaintiff timely reject or revoke acceptance of the water cannons; and 4) the statute of frauds bars any enforcement of the alleged express warranties.

A.  Single or Multiple Transactions

Bergemann and Sunflower disagree on whether to characterize the purchases of the first two and last two canons as a single or separate transactions.  Sunflower argues that the two purchases of cannons were really one transaction.  Sunflower claims that the second set of cannons were purchased only after the first set failed to provide the desired FEGT reduction; therefore, the second set of water cannons was merely an upgrade to the first sale.

Kansas has adopted the Uniform Commercial Code (UCC) and the definitions section states: "(1) "Contract for sale" includes both a present sale of goods and a contract to sell goods at a future time.  A "sale" consists in the passing of title from the seller to the buyer for a price."  Kan. Stat. Ann. § 84-2-106 (2005).

Sunflower bought the first two water cannons in July 1998 and the second two cannons in January 2002.  Not only are the sales three and a half years apart, but the purchase order for the first two cannons mentions nothing about a future sale of further water cannons.  There is nothing to show that title was intended to pass for other water cannons when the first two were purchased.  Therefore, the Court concludes that the sales of the first two and latter two water cannons were two separate sales.

B.  Express Warranty

Defendant argues that it made no representations that created an express warranty and that any representations were not part of the basis of the bargain.  The UCC section covering express warranties states:

(1) Express warranties by the seller are created as follows:

9

> (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.
>
> (b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.
>
> (c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.
>
> (2) It is not necessary to the creation of an express warranty that the seller use formal words such as "warrant" or "guarantee" or that he have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty.

Kan. Stat. Ann. § 84-2-313.

> The 1996 Kansas comments to Kan. Stat. Ann. § 84-2-313 state:
>
> 3.  Subsection (2) states that mere affirmations of value of the goods, opinions, commendations, or forms of "puffing" do not create express warranties.  A statement by the seller is less likely to create an express warranty if it is verbal rather than written; general rather than specific; related to the consequences of buying rather than the goods being bought; "hedged"; phrased as a statement of opinion rather than fact; or not capable of objective measurement.  However, Kansas courts almost never find that a statement by a seller is mere puffing...
>
> 4.  Under this section, a representation by the seller must become "part of the basis of the bargain" before it creates an express warranty.  This requirement is the Article 2 counterpart to the pre-Code requirement of reliance, but is much less stringent...The buyer must, however, know of a representation prior to purchase for it to become part of the basis of the bargain...

Id. cmts. 3, 4.

Many material facts showing the existence of an express warranty are disputed and involve credibility determinations; however, the Court will view the facts in the light most favorable to Plaintiff.

With respect to the first purchase of two water cannons, Sunflower expressed an interest in lowering the FEGT.  Bergemann represented in writing that the cannons were predicted to lower the FEGT by 100 degrees Fahrenheit.  With respect to the purchase of the second pair of cannons, Sunflower expressed an interest in lowering the FEGT and Bergemann represented in a conversation that they could

10

lower the FEGT.  Defendant also predicted in the June 4, 2001 proposal a reduction of an additional 70

degrees Fahrenheit for a total reduction of 200 degrees Fahrenheit

Defendant's argument that its representations were not part of the basis of the bargain is

unsupported.  The evidence shows that Sunflower was seeking a product to lower the FEGT and

Defendant represented that its water cannon system could lower FEGT by certain amounts.  It is not

reasonably debatable that these assertions did not then become part of the basis of the bargain. See Id.

cmt. 3 (affirmations of fact made by the seller about the goods during a bargain are regarded as part of the

description of those goods; hence, no particular reliance on such statements need be shown in order to

weave them into the fabric of the agreement).

Defendant's assertions that there is no genuine issue of material fact that its representations were

not warranties are meritless.  Many of the factors listed in comment three of Kan. Stat. Ann. § 84-2-313

support Sunflower's contention that the representations were warranties.  In each of the two separate

purchases of cannons, Defendant made representations in written form.  Both representations of 100 and

70 degree reductions in the FEGT were very specific.  In fact, the spreadsheet for the June 4, 2001

proposal shows a predicted reduction of 70.9 degrees Fahrenheit with the purchase of two more cannons.

Furthermore, the FEGT can be objectively measured.

While some of these material facts are disputed, a reasonable jury could find that the written

predictions were not mere opinions but representations constituting an express warranty.  *Topeka Mill &*

*Elevator Co. v. Triplett*, 213 P.2d 964, 969, 168 Kan. 428, 435 (1950) (representations of fact like a

certain quantity of corn existing in a field, acreage occupied by a railway right of way or any particular fact

capable of exact determination are not mere expressions of opinion but warranties); *see also Young &*

11

*Cooper, Inc. v. Vestring*, 521 P.2d 281, 214 Kan. 311 (1974).

Bergemann cites *Voelkel v. General Motors Corp.*, 846 F. Supp. 1482 (D. Kan. 1994) to support its position. In *Voelkel,* the Plaintiff argued that an express warranty was created regarding the quality and performance of the seatbelts. The court disagreed, finding that the language relied upon by Plaintiff was too broad and non-specific. *Voelkel,* 846 F.Supp. at 1485 ('Great road cars' offering 'innovative styling and engineering' is non-specific language used in a context and manner that would qualify it as a seller's opinion). Additionally, the court found that the quality of the seatbelts did not form a part of the basis of the bargain as there was no evidence that Plaintiff read or knew of the language allegedly creating the express warranty. *Id.*

Defendant's reliance upon *Voelkel* is misplaced because the facts in the case *sub judice* are distinguishable. *Id.* Unlike *Voelkel*, the sale of the water cannons is more clearly connected to the basis of the bargain. *Id.* Sunflower alleges that lowering the FEGT was the principal goal and Defendant had predicted a specific reduction in the FEGT if Sunflower purchased Bergemann's product. Additionally, the representations in *Voelkel* were broad and general; whereas, Defendant's representations were made with specificity that estimated an FEGT reduction to a tenth of a degree. *Id.* This shows that representations to lower the FEGT for the first and second cannon purchases were a part of the basis of the bargain and the predictions were given with enough specificity that a reasonable jury could find that they became an express warranty. *Madison v. Deseret Livestock Co.*, 574 F.2d 1027, 1037 (10th Cir. 1978) (summary judgment should not be granted where different inferences can be drawn from conflicting affidavits, depositions and other evidence). "The line which separates a case of mere puffing and commendation from an affirmation of a fact is sometimes indefinite. It is in such cases that a perplexing

problem arises as to the meaning or intention of the seller.  In such cases it is ordinarily the province of a jury to determine as a matter of fact whether a warranty was intended." *Triplett*, 213 P.2d at 969.

C.  Statute of Limitations

Bergemann argues that Sunflower's cause of action for the sale of the first two water cannons is barred by the statute of limitations.  Defendant argues that: 1) the cause of action accrued a month after tender of delivery in May 1999; and 2) Sunflower should have discovered that the water cannons were not working as warranted sooner than eight months after their purchase; hence, the four year statute of limitations would have expired prior to the December 2003 filing.[3]

The statute of limitations for contracts for the sale of goods is four years.  Kan. Stat. Ann. § 84-2-725 (1).  The statute also states that:

> [a] cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach.  A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

Kan. Stat. Ann. § 84-2-725 (2).

Sunflower argues that the cause of action accrued when the breach was discovered in December 1999.  The suit would then be timely because it was filed in December 2003.  Plaintiff's argument requires

_____

[3] Bergemann offers two documents showing FEGT readings soon after the first two cannons were installed.  (Def. Ex. 4, 9).  However, there is no deposition, document or other evidence linking these exhibits to Sunflower.  The documents are without signatures, corporate letterheads or any other identifying marks.  There is only Bergemann's bare argument that Sunflower should have discovered the breach earlier, supported by generic documents showing dates and temperatures.  This is insufficient to show that Sunflower knew that the cannons were not performing as expected earlier than December 1999.

the Court to accept Sunflower's assumption that the warranty falls within the future performance exception under subsection (2). *See Voth v. Chrysler Motor Corp.*, 545 P.2d 371, 375, 218 Kan. 644, 648 (1976) (with respect to the accrual of a cause of action for breach of warranty, lack of knowledge by the aggrieved party is of no consequence under the express language of subsection (2)).

The Court concludes that the statute of limitations for the express warranty in the case *sub judice* does not meet the exception in subsection (2). The warranty includes no time or other reference to any future performance, nor is there a date predicting when the FEGT was supposed to have been lowered by 100 degrees. *Cf. Full Faith Church of Love West, Inc. v. Hoover Treated Wood,* 224 F. Supp. 2d 1285, 1293 (D. Kan. 2002) (Warranty covering treated wood meets future performance exception in subsection (2) because it explicitly warrants the wood for a specific time). Therefore, the statute of limitations runs from the date of delivery or if the installation was installed by Defendant, the date runs from when the installation was complete. Kan. Stat. Ann. § 84-2-725 (2); *Atlas Industries, Inc. v. National Cash Register Co.*, 531 P.2d 41, 47, 216 Kan. 213 (1975) (Defendant installed product; therefore, tender of delivery did not occur until installation was completed). It is unclear whether Defendant installed the water cannons; however, the facts show that the water cannon system became operational in April 1999. Delivery of the cannons would have naturally occurred prior to the operational phase of the system; therefore, even using the later date of April 1999, Plaintiff's action would be time barred.

Plaintiff argues that even if the express warranty claim for the first two water cannons accrued prior to December 1999, the doctrine of equitable tolling estops Bergemann from asserting the statute of limitations as a defense.

"A party asserting equitable estoppel must show that another party by its acts, representations,

14

admissions or silence when it had a duty to speak, induced it to believe certain facts existed.  It must show it rightfully relied and acted upon such belief and would now be prejudiced if the other party were permitted to deny the existence of such facts."  *Rockers v. Kansas Turnpike Auth.,* 991 P.2d 889, 894, 268 Kan. 110, 116 (1999).

Plaintiff claims that when the first two water cannons were discovered to have not lowered the FEGT, Defendant represented that two more cannons could give Sunflower the desired results.  Sunflower alleges that it relied upon those representations by subsequently purchasing two more cannons from Defendant.  Sunflower provides the following as evidence to support its argument:

1).  "[W]e began discussing the second two cannons because that was part of their remedy, was to you know, if you're not getting what you want with two cannons let's look at installing the second two cannons and see if complete coverage would help."  (Linville Dep. at 98).

2).  "I consulted Clyde-Bergemann concerning [high FEGT] and they did an evaluation of our existing system and boiler.  They recommended we install two more cannons...".  (Def Ex. H).

3).  In a June 4, 2001 proposal to address the increase in FEGT, Bergemann recommended two more water cannons to clean a greater area and increase furnace absorption.  (Pl. Ex. 4).  Included in this proposal were the calculations that expected a 200 degree reduction in FEGT with all four cannons.  (Id.).

4).  "Sunflower upgraded the water cleaning system in March 2002 based upon the representation of Dominick Garton that the upgrade was needed to obtain the original performance predicted for the initial system and to obtain additional reduction [sic] of FEGT in its boiler with the addition of two more water cannons".  (Schimke Aff. ¶ 7).

Plaintiff has made a sufficient showing that Defendant represented that the FEGT could be further

reduced if Sunflower bought two additional cannons.  Plaintiff has shown it relied on these representations, as Sunflower did in fact purchase the additional two water cannons to lower the FEGT.  Therefore, Defendant is equitably estopped from asserting the statute of limitations as a defense.  *See Zurn Constructors, Inc. v. B.F. Goodrich Co.*, 746 F. Supp. 1051, 1056 (D. Kan. 1990) (A defendant may be precluded from relying on the bar of the statute of limitations if he has acted to lull his adversary into a false sense of security).

D.  Rejection, Revocation of Acceptance and Notice of Breach were untimely

Bergemann argues Defendant is entitled to summary judgment because: 1) Sunflower did not timely reject the cannons under Kan. Stat. Ann. § 84-2-601; 2) did not revoke acceptance in a timely manner under Kan. Stat Ann. § 84-2-608; and 3) did not provide timely notice of a breach of express warranty under Kan. Stat Ann. § 84-2-607(3)(a).

Bergemann's first two arguments are misguided as rejection and revocation of acceptance are independent causes of action from an action for damages for breach of a warranty. Kan. Stat Ann. § 84-2-714.  An official comment under the breach of warranty statute states "[t]his section deals with the remedies available to the buyer after it has accepted the goods and the time for revocation of acceptance has passed."  Id. cmt. 1.  Consequently, Plaintiff's  failure to timely reject or revoke acceptance does not mandate a summary judgment in a case for breach of express warranty.  *J.L. Clark Mfg. Co. v. Gold Bond Pharmaceutical Corp.*, 669 F. Supp. 40 (D. R.I. 1987).

Bergemann also argues that Sunflower is barred from asserting a breach of warranty because Plaintiff failed to provide timely notice.  Kan. Stat Ann. § 84-2-607(3)(a).  Plaintiff claims that Bergemann

waived its right to assert this defense because it was not raised at the pretrial conference.  Defendant claims that the defense of laches in the pretrial order is sufficient to raise the present claim under Kan. Stat Ann. § 84-2-607(3)(a).

The applicable Kansas UCC provision states, "[w]here a tender has been accepted the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of the breach or be barred from any remedy."  Id.  The elements of laches, as listed in the pretrial order, state that Sunflower neglected to assert its claim for breach of warranty for an unreasonable and unexplained length of time.  (Doc. 68 at 13).

While the pretrial order did not specifically list Kan. Stat Ann.  § 84-2-607(3)(a), this is not fatal as pretrial orders "should be liberally construed to cover any of the legal or factual theories that might be embraced by their language." *Trujillo v. Uniroyal Corp.*, 608 F.2d 815, 818 (10th Cir. 1979).  The elements of laches as listed in the pretrial order are virtually the same as those listed for Kan. Stat Ann. § 84-2-607(3)(a); therefore, Defendant has not waived its right to raise this defense.  *Cf. Dold v. Sherow,* 552 P.2d 945, 949, 220 Kan. 350, 353 (1976) (flaws in plaintiff's pleading were waived by defendant's failure to raise the issue at the pretrial conference and its absence in the pretrial order).

The Court will now address the merits of Defendant's argument.  "The purpose of the notice requirement is to provide the seller with an opportunity to correct defects, to prepare for negotiation and litigation, and to protect itself from stale claims which it has no opportunity to investigate." *Agristor Leasing v. Meuli,* 634 F. Supp. 1208, 1221 (D. Kan. 1986); *City of Wichita v. United States Gypsum Co.*, 828 F. Supp. 851, 857 (D. Kan. 1993).  "Kansas law requires the court to focus on the purposes of giving notice under the totality of the circumstances." *United States Gypsum*, 828 F. Supp. at 857.

17

The first two water cannons were operational in April 1999.  (Pretrial Order Stipulation, ¶ 4(a)(2)).

Sunflower discovered that the cannons were not reducing the FEGT in December 1999 and Bergemann

found out the same a year and a half later.  (Schimke Dep. at 34); (Def. Ex. J); (Pl. Ex. 4).  Upon

notification, Bergemann recommended that Plaintiff purchase an additional two cannons to obtain the

desired FEGT reduction.  (Id.); (Def Ex. I).

Using the factors in *Meuli*, the court concludes that Defendant's notice a year and a half after

Plaintiff first discovered the defect does not bar an express warranty claim under Kan. Stat Ann. § 84-2-

607(3)(a).  *Meuli,* 634 F. Supp. at 1221.  Plaintiff's notice of the breach of warranty provided an

opportunity for Defendant to furnish other solutions to reduce high FEGT.  In 2001, Bergemann

recommended the purchase of two more water cannons, which Sunflower agreed to do.  (Def. Ex. I); (Def.

Ex. J); (Pl. Ex. 4).  Additionally, Bergemann has not been caught off guard by the lawsuit as it has been

aware that the cannons have not met Sunflower's expectations since 2001.  (Id.); (Pl. Ex. 10).  The third

purpose has also been satisfied as the abundance of exhibits filed by both sides show that there has been

ample time to investigate Plaintiff's claim.  *Cf. Carson v. Chevron Chemical Co.,* 635 P.2d 1248, 1255,

6 Kan. App. 2d 776, 783 (1981) (notice unreasonable when seller received notice of alleged breach of

warranty upon filing of lawsuit)

E.  Statute of Frauds

Defendant asserts that summary judgment is proper because any express warranty that the cannons

would lower the FEGT by a certain temperature was not in writing; hence, it is barred by the Statute of

Frauds.  Kansas Statue § 84-2-201 states:

18

(1) Except as otherwise provided in this section a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker.  A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this paragraph beyond the quantity of goods shown in such writing.

Id.

Plaintiff provides evidence that the express warranties were in writing; however, Plaintiff also argues that express warranties need not be in writing.  (Pl. Ex. 4); (Pl. Ex. 5).  The Kansas Supreme Court has stated "[i]t is clear that for there to be an express warranty there must be an explicit statement, written or oral, by the party to be bound prior to or contemporaneous with the execution of the contract."  *Corral v. Rollins Protective Services Co.,* 732 P.2d 1260, 1266, 240 Kan. 678, 685 (1987).  The applicable Kansas statute provides further support for Sunflower's position; "[t]he writing required under this section need only be sufficient to show that a sales contract has been made; the contract itself need not be in writing.  The writing may be silent as to price, time, payment, delivery, quality and the like...The only required term is the quantity term..." Kan. Stat. Ann. § 84-2-201 cmt. 2; *see Southwest Engineering Co. v. Martin Tractor Co.*, 473 P.2d 18, 23, 205 Kan. 684, 689 (1970).  Summary judgment in favor for Bergemann is not proper because the oral nature of an express warranty does not preclude its enforcement.

## PART TWO - Motion to Amend Pretrial Order

Plaintiff wishes to amend the pretrial order to assert a claim for fraud and associated punitive damages.  Defendant argues that the motion should be denied as it would be futile because Plaintiff has failed to state a claim for which relief can be granted; moreover, Defendant would suffer prejudice if the

motion were granted.

## I.  Allegations

The record shows that the pretrial order was signed January 28, 2005; however, no trial date has been set.  (Doc. 68).  Sunflower filed a motion to amend the pretrial order on May 24, 2005.  (Doc. 85).

Plaintiff argues that the following allegations warrant the amendment of the pretrial order to include a claim for fraud.  Charles Breeding (Breeding), Bergemann's chief boiler engineer, calculated various specific reductions in the FEGT that Sunflower should expect with the installation of the water cannons. Sunflower relied on these representations and purchased two sets of cannons; however, there was only a negligible drop in FEGT.   Breeding stated that the calculated reductions were based on empirical experience.   Upon further discovery, Sunflower found that there was no empirical experience that supported a reduction in FEGT with water cannons; therefore, Breeding must have known or should have known that the calculations were false.

Sunflower alleges that this information was uncovered only after the deadline for discovery had passed and the pretrial conference had been held.  Moreoever, the late discovery of this information is allegedly due to Bergemann's non-responsive replies to discovery requests.

## II. Futility of Amendment

The pretrial order supercedes the pleadings and controls the subsequent course of the case. *Metzger v. City of Leawood,* 144 F. Supp. 2d 1225, 1258 (D. Kan. 2001).  Rule 16(e) of the Federal Rules of Civil Procedure state that a pretrial order "shall be modified only to prevent manifest injustice."

Id.  "[A]s a general rule, a plaintiff should not be prevented from pursuing a valid claim just because she did not set forth in the complaint a theory on which she could recover..." *Evans v. McDonald's Corp.*, 936 F.2d 1087, 1090-1091 (10th Cir. 1991).

The Supreme Court has added that amendments should be freely given '[i]n the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc..." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

A court is justified in denying a motion to amend as futile if the proposed amendment cannot withstand a motion to dismiss or otherwise fails to state a claim.  *Ketchum v. Cruz*, 961 F.2d 916, 920 (10th Cir. 1992).  When deciding a motion to dismiss for failure to state a claim, the court should assume all facts alleged in the complaint are true and should indulge all reasonable inferences in favor of the plaintiff. *Weatherhead v. Globe International, Inc*. 832 F.2d 1226, 1228 (10th Cir. 1987) (internal quotations and citations omitted).  A court should not grant a motion to dismiss for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove not set of facts in support of his claim which would entitle him to relief.  *Id.*

Defendant argues that an amendment to the pretrial order would be futile because: 1) Bergemann made no false representations; 2) Sunflower cannot show reliance because the representation was labeled 'estimate'; and 3) Sunflower lacks standing.

Bergemann's first argument is meritless as Sunflower alleges that the written estimates calculating specific reductions in the FEGT were statements that Defendant knew or should have known to be false.

21

The calculated reductions were based on empirical experience; however, Plaintiff alleges that there was no experiences to support the calculated reductions. The allegations show that there were only six out of approximately 60 instances where water cannons induced any FEGT reduction and even those changes averaged less than 50 degrees. While some of these allegations are disputed, when viewed in the light most favorable to Plaintiff, it cannot be said that Plaintiff's motion to add a fraud claim would be futile.

Bergemann also argues that Plaintiff cannot show reasonable reliance because one of the figures predicting a FEGT reduction is prefaced by the word 'estimate'. The Court disagrees. Plaintiff alleges that its primary goal was to reduce the FEGT and Bergemann represented, in both sales of cannons, that its products could reduce the FEGT by a specific number. Plaintiff alleges that it purchased two sets of cannons in reliance on those representations. Drawing reasonable inferences in favor of Sunflower, the Court cannot deny Plaintiff's motion as futile because it does not appear beyond a doubt that Sunflower can prove not set of facts in support of the reliance element. *See Archuleta v. Wal-Mart Stores, Inc.,* 395 F.3d 1177, 1189 (10th Cir. 2005) (the court's function in a motion to dismiss is not to weigh potential evidence).

Defendant also argues that Plaintiff's claim ought to be dismissed because Sunflower lacks standing because: 1). Bergemann's conduct did not cause Plaintiff an injury and 2). Sunflower cannot assert the rights of other parties allegedly injured by Bergemann's misrepresentations.

Defendant supports its argument by citing to Plaintiff's brief, which states, in support of its fraud claim, that Bergemann made misrepresentations in June 2004 and that Bergemann misrepresented the capability of the cannons to dozens of other potential customers. (Pl. Ex. 9).

[O]ur standing jurisprudence contains two strands: Article III standing, which enforces the

Constitution's case or controversy requirement, and prudential standing, which embodies "judicially self-imposed limits on the exercise of federal jurisdiction.  The Article III limitations are familiar: plaintiff must show that the conduct of which he complains has caused him to suffer an "injury in fact" that a favorable judgment will redress...[W]e have explained that prudential standing encompasses the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievance more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked.

*Elk Grove Unified Sch. Dist. v. Neadow,* 124 S. Ct. 2301, 2309 (2004) (internal quotations and citations omitted).

Defendant's standing argument fails because it is based on only two of many other alleged misrepresentations.  The crux of support for Plaintiff's claim emanates from the lack of any basis for Bergemann's specific calculations showing a reduction of the FEGT.  Plaintiff has alleged reliance on these representations and an injury because the product did not produce the expected results.  The Court finds that Plaintiff has standing because Sunflower has sufficiently linked Defendant's conduct to an injury in fact and has made a showing that a favorable judgment will redress this injury.

### III.  Amending the Pretrial Order

Defendant argues in the alternative that even if the motion to amend is not futile, it should be denied because Bergemann has been surprised and would suffer prejudice if Sunflower were able to assert a fraud claim.

"The order following a final pretrial conference shall be modified only to prevent manifest injustice".  Fed. R. Civ. P. 16(e).  The decision to modify the pretrial order lies within the trial court's discretion; however, four factors should be considered when evaluating a motion to amend a pretrial order.  *Koch v.*

23

*Koch Industries*, 203 F.3d 1202, 1222 (10th Cir. 2000). These factors include: "(1) prejudice or surprise to the party opposing trial of the issue; (2) the ability of that party to cure any prejudice; (3) disruption to the orderly and efficient trial of the case by inclusion of the new issue; and (4) bad faith by the party seeking to modify the order." *Id*. "[T]he timing of the motion in relation to the commencement of trial is an important element in analyzing whether the amendment would cause prejudice or surprise." *Davey v. Lockheed Martin Corp.,* 301 F.3d 1204, 1210 (10th Cir. 2002).

Bergemann claims that it would suffer prejudice because it has shaped its defense on the existing pleading and because a motion at this stage in the litigation would change the course of the trial.

Defendant's surprise and fear of prejudice are unwarranted because the fraud claim is closely related to the breach of express warranty. Both claims involve the same representations to lower the FEGT made in connection with the sale of two sets of water cannons. *Cf. Walters v. Monarch Life Ins. Co.,* 57 F.3d 899, 903 (10th Cir. 1995) (trial court's denial of a motion to amend upheld because the rescission claim would have introduced an entirely new scenario for a trial relating to false or fraudulent disclosures). Additionally, no trial date has been set; consequently, any prejudice or surprise suffered by Defendant can be ameliorated by allowing further time for discovery. Finally, there is no evidence of bad faith by Plaintiff. Sunflower acquired the facts necessary to support its fraud claim only after filing two motions to compel and the information was received after the pretrial conference. (Doc. 64, 76).

Bergemann requests, and Sunflower does not object, that the Court reopen discovery for 120 days to allow Defendant to respond to the new claim. The Court agrees, as this is necessary to offset any prejudice suffered by Defendant from the addition of Plaintiff's fraud and associated punitive damages claim.

It is ORDERED that Defendant's Motion for Summary Judgment (Doc. 70)  be DENIED.  It is further ORDERED that Plaintiff's Motion to amend the pretrial order (Doc. 85) be GRANTED. Moreover, it is ORDERED that discovery be allowed for 120 days after the entry of this order and that the case be referred to Magistrate Judge Humphreys for discovery and scheduling orders.


SO ORDERED this 2nd  day of August 2005.



 s/ Wesley E. Brown

Wesley E. Brown, U.S. Senior District Judge